**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


DARLA ALBRIGHT,                              )
                                             )
                        Plaintiff,           )
                                             )       Civil Action No. 11-1079
            v.                               )
                                             )       Judge Gary L. Lancaster
MICHAEL J. ASTRUE,                           )       Magistrate Judge Maureen P. Kelly
Commissioner of Social Security,             )
                                             )
                        Defendant.           )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


### I. RECOMMENDATION

Darla Albright ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 − 433 ("Act").  The matter is presently before the Court on cross-motions for summary judgment.  (ECF Nos. 8, 13).  For the reasons that follow, it is respectfully recommended that the Commissioner's decision be vacated and the case be remanded for further consideration of Plaintiff's claims consistent with this Report and Recommendation.

## II. **REPORT**

### A. BACKGROUND

#### 1. **General**

Plaintiff filed for benefits on August 11, 2008, claiming an inability to work as of July 1, 2008[1] due to disability resulting from alleged depression, anxiety, stress, panic disorder, diabetes, acid reflux, hiatal hernia, and irritable bowel syndrome. (R. at 114 – 18, 153).

Plaintiff was born on September 15, 1946, and was sixty three years of age at the time of her administrative hearing. (R. at 28). Plaintiff lived in a house with her husband. (R. at 40). Plaintiff completed high school and received training in a nursing assistant program. (R. at 28, 38). Plaintiff's most recent employment was as a "floor associate" at a local Sam's Club store. (R. at 29). Her duties consisted primarily of folding clothing. (R. at 29).

#### 2. **Medical History**

The medical record in the present case contains a variety of notes regarding physical and mental ailments suffered by Plaintiff over a significant period of time. The records illustrate that Plaintiff was treated by various sources for knee, shoulder, and gastrointestinal issues, and diabetes prior to Plaintiff's application for benefits. Included are diagnostic imaging studies of Plaintiff's right knee in October and December 2009 indicating that Plaintiff experienced mild, stable bursitis, and mild, stable joint effusion. (R. at 301, 303). Plaintiff also had AC joint arthritis. (R. at 225). Gastroenterologist Balu B. Shetty, M.D., treated Plaintiff for her gastrointestinal ailments over a substantial period of time. A colonoscopy was performed on

---

[1] The ALJ determined that Plaintiff had been engaged in substantial gainful activity until March 30, 2009, and, therefore, could not be found disabled prior to that date for purposes of awarding DIB. (ECF No. 6-2 (citations to ECF Nos. 6 – 6-9, the Record, *hereinafter*, "R. at __") at 11).

Plaintiff by Dr. Shetty in May 2008, at which point Plaintiff was diagnosed with the chronic condition of severe irritable bowel syndrome. (R. at 242 – 43).

On June 18, 2009, psychologist Dorothy W. Gold, Ph.D., performed an initial evaluation of Plaintiff's mental state. (R. at 296 – 99). Plaintiff was seeking treatment for depression, panic, and anxiety. (R. at 296 – 99). Dr. Gold noted Plaintiff also had a history of diabetes and acid reflux. (R. at 296 – 99). Dr. Gold observed Plaintiff to have normal, but pressured speech. (R. at 296 – 99). Plaintiff was anxious and her affect was dysphoric and constricted. (R. at 296 – 99). However, Dr. Gold noted that Plaintiff was fully alert and oriented, had good memory, attention and concentration, abstract thinking, and information processing, had fair judgment and insight, and had average intelligence. (R. at 296 – 99). Plaintiff informed Dr. Gold that she enjoyed exercise and reading. (R. at 296 – 99). Plaintiff was cooperative during the evaluation, but exhibited depersonalization, irritability, depression, and preoccupation. (R. at 296 – 99). Plaintiff was diagnosed with major depression and agoraphobia. (R. at 296 – 99).

Plaintiff began to see Dr. Gold on a regular basis beginning in July 2009. (R. at 294 – 95). Plaintiff was placed on medications. (R. at 294 – 95). By the middle of July, Plaintiff was noted to be making significant progress. (R. at 292). Her medications were regularly adjusted to aid in improving her psychological symptoms. (R. at 291). By August 2009, Plaintiff was progressing moderately, and stated that she was feeling better. (R. at 290). However, Plaintiff's anxiety was difficult to resolve. (R. at 289). By September 2009, Plaintiff had become more relaxed at her therapy sessions. (R. at 288). Plaintiff was continuing to make progress. (R. at 286 – 87). By October 2009, Dr. Gold noted that despite continuing difficulty with anxiety and depression, Plaintiff was continuing to work, and was able to improve her mood by running on a daily basis. (R. at 283). Plaintiff stopped seeing Dr. Gold in October 2009. (R. at 311).

On February 24, 2010, Dr. Gold completed a Medical Assessment of Ability to do Work-Related Activities (Mental). (R. at 309 – 11). Plaintiff was diagnosed with major depression and panic agoraphobia. (R. at 309 – 11). Dr. Gold indicated that Plaintiff's ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stress, understand, remember, and carry out complex job instructions, and relate predictably in social situations was poor. (R. at 309 – 11). Plaintiff worked best when "no one bothers me." (R. at 309 – 11).

Dr. Gold noted that Plaintiff's ability to use judgment, maintain attention and concentration, and behave in an emotionally stable manner was fair. (R. at 309 – 11). Her ability to follow work rules, function independently, understand, remember, and carry out detailed and simple job instructions, maintain personal appearance, and demonstrate reliability was good. (R. at 309 – 11). Dr. Gold did not believe, however, that Plaintiff could work a normal work day/week. (R. at 309 – 11).

Beginning in June 2006 and continuing through December 2009, Plaintiff was seen by Emillio Villegas, M.D. on an ongoing basis for medication management of her physical conditions including severe irritable bowel syndrome, diabetes, acid reflux, and knee pain. (R. at 201, 245 – 63, 301 – 08). Dr. Villegas also noted – similarly to Dr. Gold – that Plaintiff struggled with depression and anxiety. (R. at 245 – 63, 301 – 08).

Dr. Shetty, Plaintiff's gastroenterologist, completed a Medical Source Statement of Ability to do Work-Related Activities (Mental and Physical) on August 28, 2008. (R. at 265 – 69). Dr. Shetty indicated that Plaintiff had no limitations in her physical ability to lift, carry, stand, walk, sit, push, pull, or complete other postural functions. (R. at 265 – 69). The form, however, did not contain any questions regarding gastrointestinal conditions and any corresponding limitations. (R. at 265 – 69).

A Psychiatric Review Technique was to be completed by Douglas Schiller, Ph.D., on September 25, 2008. (R. at 270 – 82). However, Dr. Schiller was unable to determine the degree of Plaintiff's impairment and limitation due to Plaintiff's unwillingness to help Dr. Schiller evaluate her. (R. at 265 – 69). No findings were made. (R. at 265 – 69).

### 3. Administrative Hearing

At her hearing before the ALJ, Plaintiff testified that her most significant barriers to maintaining employment were her anxiety and panic attacks while around others. (R. at 50). She stated that she prefers not to be around people, generally, and suffers panic attacks almost daily as a result. (R. at 51). Due to her aversion to people, Plaintiff claimed to have difficulty sleeping when she was scheduled to work the next day. (R. at 51). Her psychological state often made it difficult to focus and concentrate while working. (R. at 52). Her employer made accommodations for her difficulties by providing extended work breaks to allow Plaintiff to calm down. (R. at 52).

In terms of daily functioning and self-care, Plaintiff described often feeling apathetic about her personal grooming. (R. at 48). However, she was capable of maintaining appropriate hygiene in order to go to work. (R. at 51). Plaintiff and her husband split household chores such as cooking, laundry, grocery shopping, and caring for their pets. (R. at 40 – 44). Plaintiff maintained a driver's license and was capable of driving independently. (R. at 44, 52). She enjoyed jogging on a near daily basis to release her psychological tension. (R. at 42 – 43). Plaintiff experienced no difficulties sitting, standing, or walking. (R. at 45). Plaintiff also liked to read. (R. at 44). She rarely left her home. (R. at 47).

Following Plaintiff's personal testimony, the ALJ asked the vocational expert whether a hypothetical person of Plaintiff's age, educational level, and work background would be capable

of engaging in substantial gainful activity existing in significant numbers in the national economy if limited to jobs involving only low stress environments with few changes in work processes and no fast pace or quota-based production standards, and not requiring more than occasional interaction with the public, co-workers, and supervisors. (R. at 54). The vocational expert explained that such a person would be capable of working as a "cleaner," with 500,000 positions available in the national economy, as a "grounds worker," with 153,000 positions available, or as a "packer," with 206,000 positions available. (R. at 54).

The ALJ followed up by asking the vocational expert what jobs would remain if the same hypothetical individual could not be within eyesight of groups of people in excess of five. (R. at 55). The vocational expert replied that the "packer" job would be eliminated, and the number of "cleaner" positions and "grounds worker" positions would be reduced to 150,000 and 70,000, respectively. (R. at 55). The ALJ concluded by asking the vocational expert to explain the typical employer tolerances for absences from work and off-task time. (R. at 55). The vocational expert responded that no more than one absence per month is typically allowed, and that most employers expect employees to be on-task at least ninety percent of any given work day. (R. at 55).

The hypothetical questions only related to Plaintiff's extensive psychiatric conditions. It did not include her significant medical conditions, including diabetes, severe irritable bowel syndrome and orthopedic issues.

## B. ANALYSIS

### 1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[2] and 1383(c)(3)[3]. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. *See* 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether substantial evidence exists in the record to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)(quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552

---

[2]     Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[3]     Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

(E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). In short, the court can only test the adequacy of an ALJ's decision based upon the rationale explicitly provided by the ALJ; the court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d. Cir. 1986).

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). The ALJ must utilize a five-step sequential analysis when evaluating whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

### 2. Discussion

In his decision, the ALJ concluded that – based upon the medical record – Plaintiff experienced severe, medically determinable impairments in the way of depression, anxiety, panic attacks, and personality disorder. (R. at 12). As a result, Plaintiff would be limited to jobs involving low stress environments with few work process changes and no fast pace or quota-based production standards, and only occasional contact with the public, co-workers, and supervisors. (R. at 13). Based upon the testimony of the vocational expert, the ALJ concluded that even with her aforementioned limitations, Plaintiff was capable of engaging in a significant

number of jobs that exist in the national economy, such as "grounds worker" or "cleaner," and was, therefore, ineligible for benefits as of her claimed disability onset date. (R. at 18 – 19).

In her Motion for Summary Judgment, Plaintiff objects to the determination of the ALJ, arguing that the ALJ erred in failing to include all limitations found by Plaintiff's treating medical sources in his RFC assessment and his hypothetical question of the vocational expert, and in failing at Step 2 to include severe, medically determinable impairments in the way of "AC Joint Arthritis," "severe irritable bowel syndrome," and "Small Joint Effusion and Bursitis" of the right knee. (ECF No. 9 at 9 – 10).

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ did not completely fulfill all of his responsibilities under the law. He astutely considered and gave substantial weight to Dr. Gold's assessment as to Plaintiff's psychiatric impairments but it does not appear that he considered the evidence of Plaintiff's physical conditions.

### a. Limitations

Initially, Plaintiff claims that the ALJ ignored the explicit findings of Dr. Gold when formulating his RFC assessment and hypothetical question, and that had he included all of her

findings, Plaintiff would have been found disabled at Step 5. (ECF No. 9 at 4 – 7). The United States Court of Appeals for the Third Circuit has held that a treating physician's opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's medical record – particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348, 1350 (3d Cir. 1987)). Yet, in accordance with this case law, the ALJ gave Dr. Gold's psychiatric limitations assessment great weight. Moreover, Plaintiff fails to illustrate how Dr. Gold's more severe findings were not accommodated by the ALJ in his RFC assessment and hypothetical question to the vocational expert.

Plaintiff's greatest limitations involved her ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stress, understand, remember, and carry out complex job instructions, and relate predictably in social situations. To deal with these findings, the ALJ provided that any jobs for which Plaintiff qualified should involve only low stress environments with few work process changes and no fast pace or quota-based production standards, and only occasional contact with the public, co-workers, and supervisors. Plaintiff does not demonstrate that these accommodations were insufficient for the limitations findings made by Dr. Gold. The provision of limited contact with others clearly targets Plaintiff's difficulties with social situations, and the low stress work environment without changing processes or rapid work pace clearly addresses her inability to do complex work or deal with normal work stress. Plaintiff does not identify what more the ALJ should have said. No error was committed here.

### b. Impairments

Plaintiff's second argument is that the ALJ was required to find that Plaintiff's physical conditions – severe irritable bowel syndrome, diabetes, AC joint arthritis, and right knee effusion and bursitis – qualified as "severe impairments" at Step 2. Plaintiff claims that the threshold for making such a finding at Step 2 is *de minimis*, and that the evidence of record concerning her physical conditions entitled Plaintiff to a finding of "severe impairment," at the least. (ECF No. 9 at 8 – 11). This Court agrees.

"Severe" impairment is defined by regulation as "any impairment . . . which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ's analysis at Step 2 to determine whether or not an alleged impairment is "severe," is no more than a "*de minimis* screening device to dispose of groundless claims." *Magwood v. Comm'r of Soc. Sec.*, 417 Fed. App'x 130, 132 (3d Cir. 2008) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F. 3d 541, 546 (3d Cir. 2003)). An impairment is not "severe" only where the record demonstrates merely a "slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Id.* Plaintiff's burden is not an exacting one. *McCrea v. Comm'r of Soc. Sec.*, 370 F. 3d 357, 360 (3d Cir. 2004) (citing S.S.R. 85-28, 1985 WL 56856 at *3). Reasonable doubts regarding the evidence should be construed in the light most favorable to the claimant. *Newell*, 347 F. 3d at 547. Further, the use of Step 2 as a vehicle for the denial of benefits should, "raise a judicial eyebrow," and deserves "close scrutiny." *McCrea*, 370 F. 3d at 360 – 61.

In the present case, the evidence regarding Plaintiff's physical conditions – particularly her diabetes, severe irritable bowel syndrome, and knee and shoulder issues – illustrated that she experienced more than a minimal impact on her ability to work. The threshold for such a finding

is not exacting, and Plaintiff met it. In light of the ALJ's omission of any discussion of potential limitations stemming from physical conditions not found to be severe impairments at Step 2, the Court must conclude that the ALJ's hypothetical and RFC assessment were inadequate. Substantial evidence did not, therefore, support the ALJ's ultimate benefits decision.

## C.    CONCLUSION

Based upon the foregoing, while the ALJ addressed the issue of limitations stemming from Plaintiff's psychiatric conditions, he did not provide a sufficient evidentiary basis to allow this Court to conclude that substantial evidence supported his decision with respect to Plaintiff's physical conditions. Accordingly, it is respectfully recommended that Plaintiff's Motion for Summary Judgment be granted, to the extent she seeks remand for reconsideration, and denied, to the extent she seeks reversal and an immediate award of benefits. Defendant's Motion for Summary Judgment should be denied. The decision of the ALJ should be vacated and the case remanded for further consideration consistent with this opinion.

"On remand, the ALJ shall fully develop the record and explain [his or her] findings… to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization" by the ALJ. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 – 01 (3d Cir. 2010). *See also Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 432 (W.D. Pa. 2010). Testimony need not be taken, but the parties should be permitted input via submissions to the ALJ. *Id.* at 801 n. 2.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193

n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

_s/ Maureen P. Kelly_
Maureen P. Kelly
United States Magistrate Judge

Dated: August 29, 2012

cc:     All counsel of record via CM/ECF